# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Shenita Bell, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT AND OTHER EQUITABLE RELIEF** |
| I.Q. Data International, Inc., | |
| Defendant. | **JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Shenita Bell ("Shenita"), is a natural person who resided in Chicago, Illinois, at all times relevant to this action.

2. Defendant, I.Q. Data International, Inc. ("IQ"), is a Washington corporation that maintained its principal place of business in Everett, Washington, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

5. At all times relevant to this action, IQ collected consumer debts.

6. IQ regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

7. The principal source of IQ's revenue is debt collection.

8. IQ is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. As described, *infra*, IQ contacted Shenita to collect a debt that was incurred primarily for personal, family, or household purposes.

10. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

11. Shenita is a "consumer" as defined by 15 U.S.C. § 1692a(3).

12. Within the past twelve months, IQ began calling Shenita in connection with the collection of a debt.

13. IQ claimed it mailed an "initial notice" letter regarding the debt to Shenita.

14. Shenita has not received any such notice and has not received anything in the mail from IQ.

15. During one telephone communication, IQ told Shenita the debt was pertaining to an apartment lease ("The Apartment").

16. Specifically, IQ told Shenita the debt was for late fees, water and damages to The Apartment.

17. When Shenita vacated The Apartment, Shenita left it in better condition than it was at the start of her lease.

18. During this communication, Shenita disputed the debt and demanded that IQ to notify the credit bureaus of her dispute.

19. In response to her lawful verbal dispute, IQ stated that they weren't going to notify anyone about the dispute, seemingly including IQ's client, until she reiterated her dispute in writing.

20. Shenita was not required to provide the dispute "in writing" to trigger IQ's requisite obligation(s).

21. Additionally, IQ threatened that their derogatory reporting was going to to show on Shelia's credit report until it was paid off.

22. The length of time IQ is permitted to report collection accounts on behalf of their clients is determined by actors other than IQ and it is specifically unlawful to report collection accounts forever "until it is paid off".

23. During this communication, Shenita asked for IQ to remove the account from Shenita's Credit Report and explained that IQ's client was misrepresenting damage to the Apartment to IQ as there was no such damage.

24. The Consumer Financial Protection Bureau Consumer Complaint Database lists 1,670 Complaints regarding IQ's debt collection methods.

25. A significant portion of these complaints seemingly involve allegations similar to the allegations herein.

26. IQ is aware that its clients record false damage charges to consumer's accounts prior to placement with IQ.

27. Despite this, IQ's policy and practice in scrubbing accounts placed by its clients does not include any validation of the amount its clients alleged is owed, or the veracity of the debt amounts.

28. Furthermore, upon being told that the debt IQ is collecting upon is improper or unlawful, IQ does not verify the factual claims with its client.

29. IQ undertook no verification process in regard to the alleged debt to verify the amount its client was claiming it was owed was lawfully owed.

30. IQ policies and procedures for processing account data received from original creditors fail to identify easily discoverable errors and avoid the needless harassment of undeserving consumers like Shenita.

31. IQ unreasonably relied upon inaccurate information provided to IQ by IQ's client while it was attempting to collect a debt from Shenita

32. Finally, under the belief that this debt would appear on her credit "forever", Shenita inquired about setting up a payment plan.

33. IQ falsely informed Shenita that IQ does not offer payment plans.

34. During this communication, Shenita told IQ she would discuss with her attorney.

35. Despite Shenita mentioning "her attorney", IQ continued to contact Shenita in connection with the collection of a debt.

36. Despite Shenita mentioning "her attorney", IQ undertook no effort to ascertain the name of her attorney.

37. Despite Shenita mentioning "her attorney", IQ continued to speak with Shenita, on more than one occasion, as if she was not represented by an attorney.

38. Despite Shenita disputing the debt, IQ did not notify the credit bureaus of the dispute.

39. Despite Shenita disputing the debt, IQ did not notify its client of the dispute.

40. IQ engaged in other conduct during other telephone conversations with Shenita that violated the FDCPA.

## **<u>COUNT ONE</u>**

### **Violation of the Fair Debt Collection Practices Act**

41. Shenita re-alleges and incorporates by reference Paragraphs 5 through 40 above as if fully set forth herein.

42. IQ violated 15 U.S.C. § 1692c(a)(2) by communicating with Shenita notwithstanding knowledge that Shenita was represented by an attorney with respect to the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

43. Shenita re-alleges and incorporates by reference Paragraphs 5 through 40 above as if fully set forth herein.

44. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

45. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

46. The likely effect of IQ's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Shenita.

47. IQ violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Shenita in connection with the collection of the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

48. Shenita re-alleges and incorporates by reference Paragraphs 5 through 40 above as if fully set forth herein.

49. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. *See Anchondo v. Anderson,*

*Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

50. IQ's policies and procedures, as described in Paragraphs 26 through 31, *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

51. IQ's practice, therefore, violates Section 1692d of the FDCPA, which provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

*See* 15 U.S.C. §1692d.

52. Because IQ's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

53. Shenita re-alleges and incorporates by reference Paragraphs 5 through 40 above as if fully set forth herein.

54. IQ violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT FIVE

### Violation of the Fair Debt Collection Practices Act

55.  Shenita re-alleges and incorporates by reference Paragraphs 5 through 40 above as if fully set forth herein.

56.  IQ violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## JURY DEMAND

57.  Shenita demands a trial by jury.

## PRAYER FOR RELIEF

58.  Shenita prays for the following relief:

   a.  Judgment against IQ for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

   b.  For such other legal and/or equitable relief as the Court deems appropriate.


RESPECTFULLY SUBMITTED,


Date: July 14, 2020                    By:___/s/ Jeffrey S. Hyslip_____
                                       Jeffrey S. Hyslip, Esq.
                                       Hyslip Legal, LLC
                                       1100 W. Cermak Rd., Suite 514
                                       Chicago, IL  60608
                                       Phone: 614-490-6491
                                       jeffrey@hysliplegal.com

                                       *Attorney for Plaintiff*